**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| AW RESTORATION, INC. d/b/a SERVPRO of LONG BEACH/OCEANSIDE,<br><br>Plaintiff,<br><br>- against –<br><br>BEACHCOMBER CONDOMINIUM ASSOCIATION, INC., D.G. SUITOR & ASSOCIATES, INC. d/b/a SUITOR, MIDDLETON, COX & ASSOCIATES, and WILLIAM P. COX, individually.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff, **AW RESTORATION, INC. d/b/a SERVPRO of LONG BEACH/OCEANSIDE** (hereinafter referred to as "**SP-LBO**") by and through its attorneys, Lau, Lane, Pieper, Conley & McCreadie, P.A., as and for its complaint against Defendants, **BEACHCOMBER CONDOMINIUM ASSOCIATION, INC**. (hereinafter referred to as "**BCA**"), **D.G. SUITOR & ASSOCIATES, INC. d/b/a SUITOR, MIDDLETON, COX & ASSOCIATES** (hereinafter referred to as "**SMCA**"), and **WILLIAM P. COX** (hereinafter referred to as "**COX**"), individually, alleges upon information and belief:

## JURISDICTION, THE PARTIES, AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2. At all relevant times mentioned herein, Plaintiff SP-LBO was and still is a corporation duly organized and existing under the laws of the State of New York with its principal place of business at 112 Mott Street, Oceanside, NY 11572. Accordingly, SP-LBO is a citizen of the State of New York for purposes of 28 U.S.C. § 1332.

3. At all relevant times mentioned herein, the Defendant BCA was and is a corporation duly organized and existing under the law of the State of Florida with its principal place of business at 635 E Gulf Drive, Sanibel, Florida 33957. Accordingly, BCA is a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

4. Defendant BCA owns, operates, manages, and/or maintains certain condominium properties located on Sanibel Island, Florida, including Buildings A, B, C and D.

5. At all relevant times mentioned herein, the Defendant SMCA was and is a corporation duly organized and existing under the law of the State of Florida

with its principal place of business at 15751 San Carlos Boulevard, #8, Fort Myers, FL 33908. Accordingly, SMCA is a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

6. At all relevant times mentioned herein, the Defendant SMCA served as BCA's management company and/or managing agent and is engaged in the operation, management, maintenance, and/or administration of the BCA condominium properties that are at issue herein.

7. At all relevant times mentioned herein, Defendant COX is an individual domiciled in the State of Florida and is, therefore, a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

8. At all relevant times mentioned herein, Defendant COX was, at all relevant times, the listed owner and president of SMCA and acted on behalf of SMCA in connection with SMCA's management and representation of BCA and its condominium properties.

9. Venue is proper in this Court because all of the events giving rise to the dispute herein occurred in this District.

## FACTS

10. On or about September 28, 2022, Hurricane Ian made landfall on the southwest coast of Florida as a Category 4 hurricane.

11. The path of Hurricane Ian took it across Sanibel Island, Florida.

12. BCA's condominium properties are located on Sanibel Island, Florida consisting of at least four buildings: Building A, Building B, and Building C Building D (collectively hereinafter referred to as the "BCA Properties").

13. On or about September 28, 2022, at approximately 3:00 a.m. the BCA Properties were struck by Hurricane Ian sustaining substantial physical damage as a result.

14. Following the impact of Hurricane Ian, BCA required professional cleaning, restoration, remediation, and damage mitigation services at the BCA Properties.

15. SMCA, acting as BCA's management company and/or managing agent, was involved in the management and administration of the BCA Properties and the procurement and/or coordination of cleaning, restoration, remediation, and damage mitigation services required as a result of the hurricane damage.

16. As an agent for BCA, COX was acting in connection with his position with SMCA and was involved with hiring SP-LBO to perform services relating to the cleaning, restoration, remediation, and damage mitigation of the BCA Properties.

17. COX represented to SP-LBO that he was authorized to engage SP-LBO to perform cleaning, restoration, remediation, and damage mitigation services at the BCA Properties resulting from the hurricane.

18. On or about October 11, 2022 SP-LBO and BCA entered into a written services Agreement (hereinafter referred to as the "Agreement") for SP-LBO to provide certain cleaning, restoration, remediation, and damage mitigation services to the BCA Properties effected by the hurricane.

19. The Agreement identified Beachcomber Condominium Association, Inc. as the customer.

20. Defendant COX executed the Agreement with SP-LBO for SP-LBO to provide cleaning, restoration, remediation, and damage mitigation services at the BCA Properties.

21. The signature line of the Agreement identified an email address for COX associated with SMCA.

22. At the time the Agreement was executed, SMCA was both BCA's management company and its registered agent.

23. At the time of the Agreement was executed, COX was president and owner of SMCA.

24. SP-LBO reasonably believed that COX was acting as an agent and as a representative of BCA through BCA's management company, SMCA when the Agreement was executed and SP-LBO relied upon that understanding when entering into the Agreement and providing the services to the BCA Properties.

25. The Agreement required SP-LBO to perform the cleaning, restoration, remediation, and damage mitigation services at the BCA Properties.

26. In exchange for the services provided by SP-LBO, BCA agreed to compensate SP-LBO pursuant to the payment terms and agreed-upon rates set forth in the Agreement.

27. The rates and payment terms were fair, reasonable, and customary for the services to be provided under the circumstances and for the type of restoration and remediation work being performed pursuant to the Agreement.

28. The services to be performed by SP-LBO included, but were not limited to, removal and disposal of carpeting and other damaged materials, removal of porous building components, drying of the buildings, mold mitigation, and other cleaning, restoration, and remediation services necessitated by the Hurricane Ian damage to the BCA Properties.

29. SP-LBO commenced performing services at the BCA Properties in approximately mid-October 2022.

30. SP-LBO continued performing services at the BCA Properties through approximately late November 2022.

31. During the period in which SP-LBO performed services, BCA and/or SMCA and their respective agents, representatives, employees, and or property managers directed, authorized, requested, and/or approved SP-LBO's continued

performance of the restoration and remediation work at the BCA Properties pursuant to the Agreement.

32. During the period in which SP-LBO was performing the services, BCA and/or SMCA knew, or reasonably should have known, that SP-LBO was performing substantial cleaning, restoration, remediation, and damage mitigation work at the BCA Properties.

33. At no point while SP-LBO was performing the work did BCA and/or SMCA cancel the Agreement or request SP-LBO to cease its services at the BCA Properties.

34. At no point while SP-LBO was performing the work did BCA and/or SMCA instruct SP-LBO to materially reduce the scope of services being performed at the BCA Properties.

35. At no point while SP-LBO was performing the work did BCA and/or SMCA advise SP-LBO that COX lacked authority to execute the Agreement.

36. At no point while SP-LBO was performing the work did BCA and/or SMCA advise SP-LBO that the Agreement was unauthorized.

37. BCA and SMCA allowed SP-LBO to continue performing the work for several weeks following the execution of the Agreement.

38. SP-LBO fully performed the services required of it under the Agreement and provided substantial and valuable services and benefits to BCA and to the BCA Properties.

39. The total charges for the services and work performed by SP-LBO were in excess of $2,997,261.55.

40. SP-LBO submitted detailed invoices to BCA reflecting the services performed and amounts charged for those services.

41. The charges reflected in SP-LBO's invoices were based upon the agreed-upon payment terms and rates and were fair, reasonable, and customary for the services performed.

42. BCA received and retained the substantial benefits of SP-LBO’s services, including the cleaning, restoration, drying, remediation, and mitigation of damage to the BCA Properties following Hurricane Ian.

43. BCA did not, during the period in which SP-LBO performed its services, contend that SP-LBO had failed to perform the services requested or that SP-LBO's work was substandard or otherwise deficient.

44. During the performance of the work, neither BCA or SMCA contended that the charges being incurred were unfair, unreasonable, or outside customary rates for the services being provided.

45. After SP-LBO completed its services, SP-LBO demanded payment for its services.

46. Despite SP-LBO's demand, BCA has failed and refused to pay SP-LBO the amounts due and owing under the Agreement.

47. As a direct and proximate result of BCA's failing to pay, SP-LBO has sustained damages presently believed to be at least $2,997,261.55.

**FIRST CAUSE OF ACTION**
**(Breach of Contract against Defendant BCA)**

48. Plaintiff reiterates, repeats, and realleges the foregoing paragraphs numbered 1 through 47, inclusive, with the same force and effect as if fully set forth herein.

49. SP-LBO and BCA entered into a valid and enforceable written Agreement on or about October 11, 2022.

50. COX executed the Agreement in connection with his role as a representative and/or agent of SMCA, BCA's management company.

51. The agreed upon services were performed by SP-LBO for the benefit of BCA in accordance with the Agreement.

52. Having fully performed under the terms of the Agreement, SP-LBO is owed the value of the services rendered.

53. BCA has breached the Agreement by failing and refusing to pay SP-LBO the amounts that are due and owing.

54. As a direct and proximate result of the foregoing, SP-LBO, and those on whose behalf it sues, has sustained damages in the approximate amount of $2,997,261.55, no part of which has been paid although duly demanded.

**SECOND CAUSE OF ACTION**
**(Unjust Enrichment as against Defendant BCA)**

55. Plaintiff reiterates, repeats, and realleges the foregoing paragraphs numbered 1 through 47, inclusive, with the same force and effect as if fully set forth herein.

56. Plaintiff pleads this cause of action in the alternative to its claim for breach of contract against BCA.

57. SP-LBO provided substantial and valuable benefits to BCA and the BCA Properties by providing extensive remediation, restoration, and damage mitigation services at the BCA Properties following Hurricane Ian.

58. BCA, through its conduct before, during, and after the performance of the Agreement, authorized, adopted, ratified, and/or otherwise became obligated to honor the Agreement.

59. BCA had knowledge and was aware that SP-LBO was on-site and performing substantial restoration, remediation, and damage mitigation services at the BCA Properties.

60. By allowing SP-LBO to continue to perform absent any form of protest, BCA obtained a substantial and valuable benefit.

61. BCA accepted and retained the benefits of SP-LBO's services that were provided to the BCA Properties.

62. SP-LBO performed the services and expended substantial costs and expenses in providing such services to the BCA Properties.

63. BCA has failed to compensate SP-LBO for the benefits it received from SP-LBO's services that were provided to the BCA Properties.

64. Under these circumstances, it would be inequitable for BCA to retain the substantial benefits conferred to it by SP-LBO by BCA refusing to pay for services rendered while maintaining the benefits of SP-LBO's performance.

65. Accordingly, if it is determined that no enforceable contract governs SP-LBO's recovery, SP-LBO is entitled to recover from BCA the reasonable value of the benefits conferred upon BCA, in the approximate amount of $2,997,261.55, no part of which has been paid.

**THIRD CAUSE OF ACTION**
**(Breach of Contract as against Defendants SMCA and COX)**

66. Plaintiff reiterates, repeats, and realleges the foregoing paragraphs numbered 1 through 47, inclusive, with the same force and effect as if fully set forth herein.

67. Plaintiff pleads this cause of action in the alternative to its claim that BCA is the contracting party and is liable under the Agreement.

68. The Agreement was executed by COX who was, at all relevant times hereto, acting in connection with his position as owner and president of SMCA.

69. In the alternative, the Agreement was executed by COX who was, at all relevant times hereto, acting outside of his position as owner and president of SMCA.

70. At the time the Agreement was executed, SMCA was BCA's management company and registered agent.

71. At the time the Agreement was executed, COX had the authority to engage SP-LBO to perform the cleaning, restoration, remediation, and damage mitigation at the BCA Properties.

72. By executing the Agreement, COX engaged SP-LBO to perform the cleaning, restoration, remediation, and damage mitigation services at the BCA Properties.

73. SMCA, through COX, participated in the engagement of SP-LBO's services at the BCA Properties.

74. SMCA and/or COX knew that SP-LBO was performing the services at the BCA Properties pursuant to the Agreement executed by COX.

75. SMCA and/or COX knew or should have reasonably known that SP-LBO expected to be paid for the services it provided under the Agreement.

76. SMCA and/or COX undertook contractual obligations to SP-LBO, including any obligation to ensure payment for the services performed.

77. SMCA and/or COX breached their contractual obligations by failing and refusing to pay SP-LBO.

78. Alternatively, to the extent the Court determines that COX executed the Agreement in his individual capacity, rather than solely as an agent or representative of BCA and/or SMCA, COX is liable for the contractual obligations he undertook under the Agreement

79. Alternatively, to the extent the Court determines that SCMA entered into the Agreement and assumed or undertook contractual obligations to SP-LBO, SMCA is liable to SP-LBO for the contractual obligations it undertook under the Agreement.

80. As a direct and proximate result of the foregoing, SP-LBO, and those on whose behalf it sues, has sustained damages in the approximate amount of $2,997,261.55, no part of which has been paid although duly demanded.

**WHEREFORE**, Plaintiff, AW RESTORATION, INC. d/b/a SERVPRO OF LONG BEACH/OCEANSIDE respectfully requests that this Honorable Court enter Judgment in its favor and award the following relief:

I. Judgment in favor of Plaintiff and against Defendant BEACHCOMBER CONDOMINIUM ASSOCIATION, INC. for breach of the Agreement;

II. In the alternative, judgment in favor of SP-LBO and against BCA, and for the reasonable value of the services and benefits conferred upon and accepted and retained by BCA;

III. In the alternative, to the extent the Court determines that Defendant WILLIAM P. COX executed the Agreement in his individual capacity or otherwise assumed personal contractual obligations thereunder, judgment in favor of SP-LBO and against COX for all amounts due and owing under the Agreement;

IV. In the alternative, to the extent the Court determines that Defendant D.G. SUITOR & ASSOCIATES, INC. d/b/a SUITOR, MIDDLETON, COX & ASSOCIATES entered into, assumed, or became obligated under the Agreement, judgment in favor of SP-LBO and against SMCA for all amounts due and owing under the Agreement;

V. An award to SP-LBO of damages in an amount presently estimated to be not less than $2,997,261.55, representing unpaid amounts due for the cleaning, restoration, remediation, and

related services performed by SP-LBO pursuant to the Agreement, together with any additional amounts proven at trial;

VI. Prejudgment interest on all amounts to which SP-LBO is entitled, from the date or dates such amounts became due and owing through entry of judgment, and post-judgment interest as provided by law;

VII. SP-LBO's reasonable attorneys' fees, costs, and disbursements incurred in prosecuting this action, to the extent recoverable under the Agreement and/or applicable law;

VIII. Costs and disbursements of this action; and

IX. Such other and further relief as this Court deems just and proper.

Dated: September 28, 2026
Tampa, Florida

**LAU, LANE, PIEPER, CONLEY & MCCREADIE, P.A.**
*Attorneys for Plaintiff*
*AW RESTORATION, INC. d/b/a*
*SERVPRO of LONG BEACH/OCEANSIDE*

By: s/ David W. McCreadie
David W. McCreadie, Esq.
100 South Ashley Drive, Suite 1650,
Tampa, FL 33602
P: 813.229.2121
F: 813.221.7710
E: dmccreadie@laulane.com
E: jwolf@laulane.com

TO:
Beachcomber Condominium Association, Inc.
635 E Gulf Drive
Sanibel, Florida 33957
C/O Island Management
711 Tarpon Bay Road
Sanibel, FL 33957

D.G. Suitor & Associates, Inc. d/b/a
Suitor, Middleton, Cox & Associates
15751 San Carlos Boulevard, #8
Fort Myers, FL 33908

William P. Cox
989 Bal Isle Dr
Fort Myers, FL 33919